UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DIMITRIOS KASTIS,<br><br>Defendant. | No. 1:08-cr-00260-DAD-BAM<br><br>ORDER GRANTING DEFENDANT'S REQUEST FOR AN EVIDENTIARY (*FRANKS*) HEARING<br><br>(Doc. No. 78) |

On July 25, 2016, defendant Dimitrios Kastis, proceeding *pro se*, filed a motion to suppress evidence. (Doc. No. 40.) On September 9, 2016, the government filed an opposition to that motion. (Doc. No. 55.) Thereafter and upon defendant's request, on October 11, 2016, the court appointed attorney Carol Moses to represent defendant Kastis in this action. (Doc. Nos. 67, 70.) On December 15, 2016, counsel on behalf of defendant filed an amended motion to suppress evidence which included a request for an evidentiary hearing. (Doc. No. 78.) On January 20, 2017 the government filed its opposition to the amended motion to suppress. (Doc. No. 80.) A hearing on the amended motion was held on February 13, 2017 at which time Assistant U.S. Attorneys David Gappa and Christopher Baker appeared on behalf of the government and attorney Carol Moses appeared on behalf of defendant. At that hearing the court raised several questions regarding the sufficiency of the search warrant affidavit at issue in these proceedings and granted the parties leave to submit supplemental briefing addressing the court's

questions. Those supplemental briefs were submitted on February 21, 2017. (Doc. Nos. 86, 87.)

Having considered all of the briefing submitted by the parties as well as their arguments presented at the hearing, and for the reasons set forth below, the court will grant defendant's request for an evidentiary hearing pursuant to the decision in *Franks v. Delaware*, 438 U.S. 154 (1978).

**Background**

This federal prosecution has a lengthy and unusual history. The search warrant in question was sought and obtained by Detective Joe Alvarado of the Clovis Police Department from a judge of the Fresno County Superior Court back on July 5, 2007. (Doc. No. 68, Ex. A; Doc. No. 85-1.) The warrant, which was executed that same day, authorized the search of the apartment of defendant Kastis for the following property:

> 1) Item #1 Computer systems located in the residence that Kastas (sic) stores images of the Confidential Victims.
>
> 2) Candy Bowl
>
> 3) Suspect #1-Dimitrious Kastas (sic) [description omitted].
>
> 4) Digital Camera used by Kastas (sic) to take photo's (sic) of the confidential victims

(Doc. No. 68, Ex. A; Doc. No. 85-1 at 4.)[1]

Following the execution of the search warrant, defendant Kastis was arrested and

---

[1] In Attachment B to the warrant, which purports to authorize what may be seized pursuant thereto, these four items are listed. (Doc. No. 85-1 at 4.) Strangely, what follows thereafter in Attachment B appears to be some sort of statement of the affiant's experience and expertise as well as opinions based thereon. (*Id*. at 4-5.) Attachment B is incorporated by specific reference only into the search warrant itself. (*Id*. at 2.) Because that statement of expertise, experience and opinion is not within the four corners of the affidavit and is not specifically incorporated therein and therefore not sworn to, it does not appear that it may be considered in reviewing the sufficiency of the warrant. Following the paragraphs of the statement of expertise, without a bridge or linkage of any kind, the next seven unnumbered paragraphs of Attachment B to the warrant list various items that are related to computers, indicia of ownership and control and other items. (*Id*. at 5-6.) It is unclear whether the warrant on its face authorized executing officers to search for the wide-ranging items mentioned in these stray, unnumbered paragraphs. It would appear, however, that executing officers believed that it did and that the seizure of those computer-related items, at least in part, resulted in the bringing of the charges in this federal prosecution.

apparently charged with violations of the California Penal Code for annoying or molesting a child in the Fresno County Superior Court.  According to his present counsel, following the preliminary hearing in that state prosecution defendant Kastis was detained.  In the meantime, a criminal complaint was filed in this court on August 4, 2008 charging the defendant with possession and distribution of child pornography in violation of 18 U.S.C. §§ 2252(a)(4) and 2252(a)(2).  (Doc. No. 1.)  An indictment was returned by the federal grand jury on August 14, 2008, charging defendant with the same offenses alleged in the complaint.  (Doc. No. 3.)

In the state court proceedings, defendant moved in October of 2011 to suppress the evidence seized from his apartment on various grounds, including pursuant to the Supreme Court's decision in *Franks*. (Doc. No. 85, Attach. B.)  That motion was eventually denied in March of 2013 without evidentiary hearing following an argument at which the defendant appeared *in propria persona*.  (Doc. No. 85-3.)  Apparently, on April 6, 2016, all state charges against the defendant were dismissed and he thereafter made his initial appearance in this court on the indictment, which had been returned August 14, 2008, on April 7, 2016.  (Doc. No. 16.)

In his motion to suppress evidence now pending before this court defendant contends that Detective Alvarado's three page affidavit in support of the search warrant for defendant's apartment and the seizure (and presumably search) of all computer systems located therein, intentionally or in reckless disregard for the truth contained numerous false statements and omitted numerous material facts known to the affiant and that correction of these deficiencies would have been fatal to the probable cause determination.  The July 5, 2007 search warrant affidavit[2] at issue here provided merely the following:  (1) Detective Alvarado's education,

---

[2] It is axiomatic that in reviewing a search warrant the court is "limited to the information and circumstances contained within the four corners of the underlying affidavit." *Crowe v. County of San Diego,* 608 F.3d 406, 434 (9th Cir. 2010) (quoting *United States v. Stanert*, 762 F.2d 775, 778, amended on other grounds, 769 F.2d 1410 (9th Cir. 1985)).  Moreover, it has been recognized that establishing probable cause to believe that someone has committed a crime does not automatically give rise to probable cause to search that person's residence.  *United States v. Foster*, 711 F.2d 871, 878 (9th Cir. 1983); *United States v. Lucarz*, 430 F.2d 1051, 1055 (9th Cir. 1970).  Rather, to justify the search of a residence, the facts supporting the warrant must show probable cause to believe that the evidence sought is presently in the place to be searched. *Foster*, 711 F.2d at 878; *United States v. Valenzuela*, 596 F.2d 824, 828 (9th Cir. 1979).  It has been explained in this regard that "probable cause to search . . . concerns the connection of the

training, and experience investigating sex crimes (but not mentioning child molestation or child pornography investigations); (2) that on June 9, 2007 a Cpl. Kerr interviewed C/V #1's mother who advised that her nine year old daughter (C/V #1) told her that a neighbor, "Kastas" (sic) (hereinafter "defendant"), had cornered her in the doorway of his apartment and kissed her on the mouth five times, had taken "pictures" of eleven year old neighbor, C/V #2, while she was wearing a bathing suit and that "this" picture was on his computer as a screen saver; (3) Cpl. Kerr then interviewed C/V #1 who said that the incident, presumably the kissing incident, took place sometime in January of 2007, that she and C/V #2 and the latter's younger sister were playing soccer in front of defendant's apartment when he invited them in for candy, that C/V #2 and her sister left the apartment but defendant blocked C/V #1 from doing so and kissed her on the mouth five times, stopping after each kiss and looking around, and that she was able to run out of the apartment when she heard her sister call, sometime after this incident the three girls played soccer with defendant again and C/V #1 saw him grab C/V #2's butt on purpose; (4) on June 20, 2016 Detective Alvarado had Shelly Ramirez of the Multi-disciplinary Interview Center interview C/V #2 who said that defendant played soccer with her and other girls living in his apartment complex, defendant "always" intentionally touched her butt over her swim suit when they went swimming at the complex pool, defendant has taken "several photos" of her in her bathing suit with his camera and that once when her mother went to visit defendant in his apartment C/V #2 saw him change the computer screen so that her mother would not see the photo, six months previous C/V #2 had been playing soccer with defendant when he commented that she was "hot" (which she took as a comment on her looks) and invited her into his apartment for some Gatorade at which time he came up behind her and placed his hands on her chest over her clothing, C/V #2 also said that C/V #1 had told her about the kissing incident; and (5) C/V #1 identified the defendant from

---

items sought with crime and the present location of the items." *Bill v. Brewer,* 799 F.3d 1295, 1301 (9th Cir. 2015), cert. denied ___U.S. ___, 136 S. Ct. 1377 (2016) (quoting *United States v. O'Connor*, 658 F.2d 688, 693 n. 7 (9th Cir. 1981)). Similarly, "[o]f course, law enforcement must demonstrate 'a nexus . . . between the item to be seized and criminal behavior.'" Bill, 799 F.3d at 1301 (quoting *Warden, Md. Penitentiary v. Hayden*, 387 U.S. 294, 307 (1967)); *see also United States v. Crews*, 502 F.3d 1130, 1136–37 (9th Cir. 2007) ("For probable cause, an affidavit must establish a reasonable nexus between the . . . evidence [sought] and the location to be searched.").

4

1  a photo lineup.  (Doc. No. 85-1 at 8–9.)

2  However, defendant contends as follows.

3     1.  According to Corporal Kerr's report of interview, C/V #1's mother never mentioned
4        defendant's last name, the location of the kissing incident or the number of times her
5        daughter claimed to have been kissed but rather reported to Kerr only that "a neighbor
6        by the name of Dimitrious kissed her [daughter] a year ago."

7     2.  According to Corporal Kerr's report of interview, C/V #1's mother did not state that
8        defendant had taken pictures of C/V #2 but rather had reported that her daughter had
9        told her that she had been told that defendant had a picture of CV #2 in a bathing suit
10       on his computer as a screensaver.

11    3.  Corporal Kerr's report describes C/V #1's version of the kissing incident in a manner
12       diametrically different than the way in which it is portrayed in the search warrant
13       affidavit including C/V #1's claim that she tripped into defendant's apartment, a claim
14       Corporal Kerr stated in her report she believed was made up by C/V #1.

15    4.  The MDIC interview of C/V #2 reflects that she reported a single incident of
16       defendant putting his hand on her butt while swimming, not that he "always touches
17       her butt when they go swimming" as reported in the affidavit.

18    5.  C/V #2 did not say that defendant had taken "several" photos of her in her bathing suit
19       as reported in Detective Alvarado's affidavit but rather said that he had taken one
20       photo of her in her bathing suit on the staircase of the apartment.

21    6.  That Detective Alvarado omitted from his affidavit that: C/V #1 had told her mother
22       the kissing incident was over a year ago; C/V #1 had given several different dates of
23       that incident ranging from five months to one year prior to her interview; Corporal
24       Kerr tested C/V #1 to ensure she knew the difference between the truth and a lie and
25       that in Kerr's opinion C/V #1 had nonetheless lied about tripping into defendant's
26       apartment and continued not to tell the truth even when pressed on that detail and even
27       at a subsequent MDIC interview; numerous other aspects of C/V #1's interviews
28       which would have called into question the credibility of the description of the kissing

incident set forth in the affidavit; an accurate description of the statements made by C/V #2 in her MDIC interview; C/V #1's mother reported that on June 6, 2007, the defendant came to her door, was upset and wanted to talk to her regarding rumors that he had kissed C/V #1 and that he denied that had occurred; C/V #1's mother had told Corporal Kerr that C/V #2 and her sister had been throwing dirt and strawberries at defendant's apartment door; and C/V #1 told Corporal Kerr that her parents do not allow her to enter defendant's apartment.

(Doc. No. 78 at 4–8.)

In opposition, defendant argues that any inaccurate statements or omissions were unintentional on Detective Alvarado's part or, in any event, were not material to the probable cause determination. (Doc. No. 80.)

**Analysis**

"A defendant is entitled to an evidentiary hearing if he 'makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause.'" *United States v. Craighead*, 539 F.3d 1073, 1080–81 (9th Cir. 2008) (quoting *Franks*, 438 U.S. at 155–56); *see also United States v. Flyer,* 633 F.3d 911, 916 (9th Cir. 2011); *United States v. Bennett*, 219 F.3d 1117, 1124 (9th Cir. 2000); *United States v. Johns,* 851 F.2d 1131, 1133 (9th Cir. 1988). Therefore, in order to be entitled to an evidentiary hearing, a defendant must come forward with specific allegations, allege a deliberate falsehood or reckless disregard for the truth, and support that claim with a sufficient offer of proof. *Craighead*, 539 F.3d at 1080 (citing *United States v. Kiser*, 716 F.2d 1268, 1271 (9th Cir. 1983)). Where a substantial preliminary showing is made, "the court must hold a hearing to determine if any false statements deliberately or recklessly included in the affidavit were material

/////
/////
/////
/////

to the magistrate's finding of probable cause."[3] *Johns,* 851 F.2d at 1133 (quoting *United States v. Burnes*, 816 F.2d 1354, 1357 (9th Cir. 1987)); *see also United States v. Stanert*, 762 F.2d 775, 780, as modified, 769 F.2d 1410 (9th Cir. 1985).

      Here, the court concludes that a substantial preliminary showing has been made by the defendant. This is particularly true given the questionable showing of probable cause made within the four corners of the three page search warrant affidavit and the breadth of the warrant that may have been issued based upon that showing.[4] As required by *Franks*, defendant has alleged that the statements of C/V #1, C/V #1's mother and C/V #2 were not accurately reported in Detective Alvarado's affidavit. Defendant bolsters this contention with copies of the reports of those interviews as well as transcripts of some of them reflecting both the inaccurate statements in the search warrant affidavit as well as the fact that it appears Detective Alvarado was aware of what the witnesses actually said. A similar showing has been made with the various omissions alleged by defendant. That showing is "substantial" in that if the alleged inaccurate statements are corrected and the alleged omitted facts added to the search warrant affidavit, a significant doubt would be cast on the existence of probable cause justifying the issuance of this warrant. This is especially true in light of the weak nexus between the probable cause showing, the location to be searched, and the items apparently to be seized pursuant to the warrant as originally presented.

/////

/////

---

[3] Affirmative misrepresentations in a search warrant affidavit are material if probable cause is lacking absent consideration of the misrepresented facts. *Crowe*, 608 F.3d at 435 (citing *Franks*, 438 U.S. at 171–72). A misrepresentation based on an omission is material where the inclusion of the omitted facts would "cast doubt on the existence of probable cause." *Crowe*, 608 F.3d at 435 (quoting *United States v. Garza*, 980 F.2d 546, 551 (9th Cir.1992)).

[4] The court uses the word "may" in this context because it remains unclear and undetermined whether this search warrant intended to and/or did authorize the seizure of the items listed in the stray, unnumbered paragraphs included at the end of Attachment B. *See* fn. 1, above. Moreover, the court notes that it appears that executing officers may well not have limited the scope of their search to even the very broadest reading of what they were authorized to search for by that warrant. (*See* Doc. No. 1 at 5-6.)

**Conclusion**

For the reasons set forth above, defendant's request for an evidentiary hearing (Doc. No. 78) is hereby granted. The parties are directed to consult with the anticipated witnesses to be called to testify at that evidentiary hearing, determine their availability and then jointly confer with the undersigned's courtroom deputy to set an appropriate date and time for the hearing which will then be confirmed by minute order.

IT IS SO ORDERED.

Dated: __**March 16, 2017**__                    /s/ Dale A. Drozd
                                                   UNITED STATES DISTRICT JUDGE