1

2

3

4

5

6

7

8    UNITED STATES DISTRICT COURT

9    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   UNITED STATES OF AMERICA,          No. 1:08-cr-00260-DAD-BAM

12          Plaintiff,

13      v.                             ORDER GRANTING DEFENDANT'S
                                       MOTION TO SUPPRESS EVIDENCE
14   DIMITRIOS KASTIS,
                                       (Doc. No. 78)
15          Defendant.

16

17          Presently before the court is a motion to suppress evidence filed on behalf of defendant

18   Kastis, styled as an amended motion to quash search warrant.[1]  (Doc. No. 78.)  That motion seeks

19   suppression of all evidence seized pursuant to the July 5, 2007 state court issued search warrant,

20   and included a request for an evidentiary hearing pursuant to *Franks v. Delaware*, 438 U.S. 154

---

[1]  Prior to the court's appointment of attorney Carol Moses to represent defendant Kastis (Doc.
No. 70), Kastis was proceeding *pro se* and had filed on July 25, 2016 and again on September 27,
2016, motions to suppress evidence, as well as for production of grand jury transcripts and to
suppress various matters referenced in discovery produced.  (Doc. Nos. 40, 62.)  The first set of
those motions were withdrawn by the defendant himself while proceeding *pro se*.  (Doc. No. 45.)
The second set of these was a 247-page long "omnibus motion.  (Doc. No. 62.)  On October 11,
2016, when attorney Moses was appointed to represent defendant for all purposes, counsel was
permitted to withdraw the 247-page omnibus motion and was granted leave to file a condensed
version of that motion.  (Doc. No. 67.)  On December 1, 2016, an order was issued pursuant to the
parties' stipulation setting a briefing schedule with respect to defendant's revised motion.  (Doc.
Nos. 73 and 74.)  Thereafter, the defendant's amended motion was filed in keeping with the
parties' stipulation.  Therefore, the September 27, 2016 omnibus motion (Doc. No. 62) was
withdrawn and should be terminated on that basis.

1

(1978).  The court granted defendant's request for an evidentiary hearing, finding that he had made a substantial preliminary showing that alleged inaccurate statements and omissions in the warrant affidavit were necessary to the finding of probable cause.  (Doc. No. 88.)

A *Franks* evidentiary hearing was held.  (Doc. No. 102.)  Assistant U.S. Attorneys David Gappa and Christopher Baker appeared on behalf of the government at that hearing, and defendant's then appointed counsel, attorney Carol Moses, appeared on behalf of the defendant.  After the evidentiary hearing, the court requested additional briefing from the parties.  (*Id.*)  Thereafter, defendant filed supplemental briefing in support of the motion and the government filed supplemental briefing opposing defendant's motion.  (Doc. Nos. 110, 111.)  Defense counsel then filed a supplemental reply and the government filed a supplemental sur-reply.  (Doc. Nos. 112, 113.)

Having considered the briefing submitted by the parties, the testimony presented at the May 22, 2017 evidentiary hearing, and for the reasons set forth below, the court grants defendant's motion.

**BACKGROUND**

This criminal prosecution has a long and tortured history.  Unfortunately, the undersigned has contributed to that history by taking entirely too long to resolve the motion to suppress evidence.  Below, the court summarizes the history of these proceedings before addressing that motion.[2]

Clovis Police Department Corporal B. Kerr initiated a child molestation investigation of defendant on June 9, 2007, after receiving an anonymous report from a woman alleging that a neighbor had kissed her nine-year-old daughter.  (Doc. No. 78 at 2.)  The anonymous woman also alleged that her daughter had told her that two girls living in the same building were complaining about the same individual.  (*Id.*)  Following investigation of this report, on July 5, 2007, a search warrant was sought and obtained from a judge of the Fresno County Superior Court by Detective

/////

---

[2]  Potential issues raised by the court's delay will be addressed below.

Joe Alvarado of the Clovis Police Department.[3]  (*Id.*)  Detective Alvarado's short, three-page

affidavit in support of the search warrant generally recounted his experience and reported the

following:

> On 06-09-2007 2007 Cpl. Kerr responded to 100 Fowler Ave. apt #248 regarding a sex offense. Cpl. Kerr arrived on scene and contacted [redacted].  [Redacted] is C/V #1's mother. C/V #1 is 9 years old. [Redacted] advised Cpl. Kerr that C/V #1 had told her that a neighbor by the name of Dimitrious Kastas [sic][4] had cornered her in his apartment's doorway and kissed her on the mouth five times. C/V #1 also told [redacted] that Kastas had taken pictures of C/V #2 while she was wearing a bathing suit. This picture was put on Kastas [sic] computer as a screen saver. C/V#2 is 11 years old and also lives in the same apartment complex that C/V #1 lives in.

> Cpl. Kerr next contacted C/V #1.  C/V #1 told Cpl. Kerr that the incident had occurred some time in January of 2007. C/V #1 stated she was playing soccer with C/V #2, C/V #2's younger sister and Kastas in front of Kastas [sic] apartment.  After playing soccer Kastas invited the three girls into his apartment for some candy and Gatorade drinks.  Kastas told the girls that the candy bowl was full of candy and that in the bottom of the bowl there was money. C/V #1 told Cpl. Kerr that C/V #2 and her sister went into Kastas [sic] apartment for the candy first. C/V #1 walked in to the apartment last and grabbed some candy out of the candy bowl. C/V #2 and her sister walked out of the apartment and tried to close the door but left it partially open. C/V #1 told Cpl. Kerr that Kastas walked over to C/V #1 and blocked her from walking out of the apartment by standing between the front door and C/V #1. C/V #1 stated she got scared and nervous. Kastas then kissed C/V #1 on her mouth approximately five times. Kastas would kiss C/V #1 and then stop and look around. Kastas would then continue kissing C/V #1 on the mouth. C/V #1 stated this continued until she heard her sister calling for her. C/V #1 told Cpl. Kerr that she was able to get away and ran out of the apartment.

> C/V #1 continued by adding that since the incident she has again played soccer with, C/V #2. [sic] C/V #2's sister and Kastas. During that incident C/V #1 saw Kastas grab C/V #2's butt on purpose. C/V stated she never told anyone about Kastas grabbing C/V #2's butt.

> On 06-20-2007 at approx. 1115hrs. [sic] I had C/V #2 interviewed by Shelly Ramirez from the Multidisciplinary Interview Center. C/V

---

[3]  As is made clear below, this court believes that the search warrant and the affidavit submitted in support thereof were flawed in a variety of respects.  The only real question before the court is whether any of these flaws requires suppression of the extremely troubling evidence seized pursuant thereto.

[4]  Throughout his affidavit, Detective Alvarado erroneously referred to defendant Kastis as "Kastas."

#2 disclosed that she knew Kastas from the apartment complex because he played soccer with her and other girls from the apartment complex. C/V #2 advised that Kastas always touches her butt when they go swimming in the apartment complex pool. C/V #2 further stated that Kastas acts like it's an accident when he touches her butt. C/V #2 stated she knows it is not an accident because of how long he leaves his hands on her butt. C/V #2 stated Kastas leaves his hands on her butt for approx. 10 seconds. The touching is done over the C/V's clothing.

C/V #2 further stated Kastas has taken several photos of her using his camera while she is wearing her bathing suit. C/V #2 has seen the photos on Kastas [sic] computer. On one occasion Kastas [sic] mother went to Kastas [sic] apartment to visit with him. C/V #2 noticed Kastas change the computer screen so that C/V #2's mother would not see the photo of C/V #2.

C/V #2 also added that approx. 6 months ago she was playing soccer with Kastas. C/V #2 told Kastas that she was hot. Kastas replied that C/V #2 was hot. C/V #2 advised that she took it as hot like the look not like the feeling. Kastas then invited C/V #2 into his apartment for some Gatorade. C/V #2 stated that while she was in his apartment Kastas offered her candy out of his candy bowl. C/V #2 stated that while she was digging for candy out of the candy bowl Kastas came up behind her and placed his hands on her privates, over her shoulders. C/V #2 stated the privates she was referring to was her chest. C/V #2 stated Kastas tried to make it look casual. This was done over C/V #2's clothing. C/V #2 eventually got her candy and left the apartment. C/V #2 also disclosed that C/V #1 had told her about Kastas kissing C/V #1.

C/V #l identified Kastas from a photo line up [sic]. In the photo line up [sic] Kastas [sic] DMV photo was used. In the DMV record Kastas has the address of Fowler Ave. apt. #130 in the city Clovis as of 2005.

(Doc. No. 85-1 at 8–9.)

Based on this supporting affidavit, a warrant was issued authorizing the search of the

defendant's apartment for the property listed in Attachment B to the warrant.[5] (Doc. No. 85-1 at

2–6.) Attachment B started by listing the following property to be seized:

/////

---

[5] Attachment A to the warrant provided a description of defendant's apartment on Fowler Ave. in Clovis and authorized the search of "all rooms, attics, basements, and all other parts therein and surrounding grounds, gardens, garages, storage rooms, or outbuilding of any kind attached or unattached to" his apartment, as well as all "vehicles under the dominion and control of the occupants of the residence, and which may be connected with the residence through paperwork, registration, and keys." (Doc. No. 85-1 at 3.) Attachment A also stated that the search was to include "all internal compartments and all containers within the" vehicles and "all occupants of the residence." (*Id.*)

1) Item #1 Computer systems located in the residence that Kastas stores images of the Confidential Victims.

2) Candy Bowl

3) Suspect #1-Dimitrious Kastas [description omitted].

4) Digital Camera used by Kastas to take photo's [sic] of the confidential victims.

(Doc. No. 85-1 at 4.) However, Attachment B to the warrant, which was purportedly limited to describing the property to be seized, then oddly turned to a description of the affiant's opinion (based on his training, experience and conversations with other law enforcement officers or review of reports), as to those who produce, trade, distribute or possess images/pictures of minors engaged in sexually explicit conduct and the property/information they retain. (*Id.* at 4.) Immediately following that detour, Attachment B then broadly listed the following additional property, apparently authorizing the executing officers to search for and seize it as well:

All electronic processing and storage devices, computers and computer systems such as central processing units, internal and peripheral storage devices such as fixed disks, internal and external hard drives, floppy disk drives and diskettes, tape drives and tapes, optical storage devices, dongles, encryption keys, personal data assistants (PDA's) or other memory storage devices and any/all peripheral input/output devices such as keyboards, printers, video display monitors, optical readers and related communication devices. Such as modems, associated telephone sets, speed dialers, and/or pother controlling devices, plotters, software to run programs, connecting cables and plugs, peripherals such as joysticks, mousses, or other input devices, scanners, writing pads, manuals, connecting switches, telephones, and telephone cables, and interface devices system documentation, operating logs and documentation, software and instructional manuals. Computing or data processing software, stored on any type of medium such as: hard disks, floppy disks, CD-R's, CD-RW's, DVD's, cassette tapes, or other permanent or transient storage medium.

Any records, whether stored on paper, on magnetic media such as tape, cassette, disk, diskette or on memory storage devices such as optical disks, programmable instruments such as telephones, "electronic calendar\address books" calculators, or any other storage media, together with indicia of use, ownership, possession, or control of such records.

Any written or computer communication in printed or stored medium such as E-Mail and Chat Logs whether in active files, deleted files or unallocated space on the hard drive, floppy drive or any data storage media.

5

Search of all of the above items is for files, data, images, software, operating systems, deleted files, altered files, system configurations, drive and disk configurations, date and time, and unallocated and slack space, for evidence.

With respect to computer systems and any items listed above found during the execution with this Search Warrant, the searching Peace Officers are authorized to seize and book said computer systems and any items listed above and transfer them to a law Enforcement Agency location prior to commencing the search of the items. Furthermore, said search may continue beyond the ten-day period beginning upon issuance of this Search Warrant, to the extent necessary to complete the search on the computer systems and any items listed above.

And articles of personal property and/or indicia tending to establish the identity of persons in control of the premises, storage areas, or containers where stolen property may be found, consisting of and not limited to utility company receipts, cancelled mail envelopes vehicle registration, addressed mail, personal identification, purchase or sales receipts photographs and other records which depict possession/sales of stolen property transactions or which connect occupants to the residence and/or stolen property transactions, and keys which found on the person of occupants which tend to connect the occupants with the residence or vehicles and to seize all monies, negotiable instruments, securities, or things of value furnished or intended to be furnished by any person in exchange for stolen property, that may be found on/in the premises or vehicles, and all incoming telephone calls (searching officers request authorization to answer the phone and converse with callers who appear to be calling regarding trafficking stolen property, and note and record the conversation without revealing their true identity.

Any and all articles falling under California Penal Code Section 537e.[6]

(Doc. No. 85-1 at 5–6.)

The search warrant was executed at the defendant's apartment and vehicle on July 7, 2007. According to the affidavit in support of the complaint filed in this court, the executing

---

[6] California Penal Code § 537e makes it a crime to buy, sell or possess personal property from which the serial or identification numbers have been removed. The provision had no apparent connection to this search. The same is true as to the warrant's authorization to search for and seize evidence of the possession and sales of stolen property. At the *Franks* hearing before this court, Detective Alvarado testified he had no reason to believe that he would find such property in defendant's apartment, but had been trained to include this language in every search warrant he sought in case he came across any stolen property in executing the search and therefore added the language in this warrant as well. (Doc. No. 107 at 43:19–46:4.) Thus, Detective Alvarado's affidavit in support of this search warrant obviously did not establish probable cause to believe that property fitting these descriptions would be found at defendant's apartment because the affidavit, as opposed to the warrant, did not address such items in any fashion.

officers seized a computer and electronic storage media, as well as books with photos of nude females under the age of 18, a printed story regarding a minor being forcefully molested, the candy dish and Gatorade, evidence detailing how the defendant only coached young girls in soccer, and a digital camera containing photographs of young girls focusing on their groin area with their underwear visible. (Doc. No. 1 at 6.) During a post-*Miranda* interview following the execution of the search, defendant admitted that he should not have possessed books with images of nude children and that he had taken photos, which he referred to as "fun photos," of little girls that focused on their faces and groin areas, but denied any inappropriate touching of young girls. (*Id.* at 6–7.) A subsequent forensic examination of the defendant's computer and hard drive seized during the search resulted in the discovery of 5,563 images of children being sexually exploited, with those images stored in an organized manner. (*Id.*) In addition, multiple sexually explicit stories in which the sexual molestation of children were a common theme were found on the defendant's computer. (*Id.* at 8.) Finally, 83 photos of 8 to 13-year-old girls that were sexual in nature, including images that appeared to have been produced by the defendant of children he had previously had access to, were found on that computer as well. (*Id.*)

Following the search of the apartment, but presumably prior to the forensic search of his computer, defendant was arrested and charged in the Fresno County Superior Court with violations of the California Penal Code for annoying or molesting a child.[7] On July 7, 2007, he was released on bond on the state charges. However, following the preliminary hearing in that state court prosecution, at which he was held to answer to the charges, he was ordered detained. (Doc. No. 78 at 2–3.) While detained in state custody on the pending state charges, a criminal complaint was filed in this United States District Court on August 4, 2008, charging the defendant with possession and distribution/receiving of child pornography in violation of 18 U.S.C. §§ 2252(a)(4) and 2252(a)(2). (Doc. No. 1.) On August 14, 2008, an indictment was returned by the federal grand jury, charging defendant with the same offenses alleged in the criminal complaint.

---

[7] At the *Franks* evidentiary hearing, Detective Alvarado testified that the focus of Corporal Kerr's investigation was a possible violation of California Penal Code § 647.6(a), annoying or molesting a child. (Doc. No. 107 at 46:13–18.)

(Doc. No. 3.)  However, defendant never appeared in this federal court while the proceedings against him in state court dragged on.[8]

In October 2011, in the state court proceedings, defendant moved to suppress the evidence seized from his apartment on various grounds, including pursuant to the Supreme Court's decision in *Franks*.  (Doc. No. 85-2.)  That motion was eventually denied in March 2013 without evidentiary hearing, following oral argument at which the defendant appeared *in propria persona*.[9]  (Doc. No. 85-3.)  Finally, on April 6, 2016, almost eight years and nine months after he was charged in state court, all state charges against defendant were dismissed.  (Doc. No. 78 at 3.)  Immediately thereafter, on April 7, 2016, defendant finally made his initial appearance in this court, almost seven years and eight months after the return of the indictment.[10]  (Doc. No. 16.)  He was subsequently ordered detained.  (Doc. No. 26.)

In the motion to suppress evidence that has been long-pending before this court, defendant contends that Detective Alvarado's three-page affidavit in support of the search warrant for defendant's apartment, and the seizure of all computer systems located therein, contained numerous false statements and omitted numerous material facts known to the affiant either intentionally or in reckless disregard for the truth, and that correction of these deficiencies would

---

[8]  This federal prosecution was assigned to a judge of this court when the indictment was returned in August of 2008.  (Doc. No. 3.)  When that district judge retired, the case was reassigned to another judge of the court in September of 2011.  (Doc. No. 7.)  Various Assistant U.S. Attorneys were designated as counsel for service of process over the seven plus years, while this federal criminal case lay dormant.  (Doc. Nos. 6, 8–12.)

[9]  As in this federal case, defendant was intermittently represented by different attorneys and invoked his constitutional right to represent himself.  This, no doubt, has played some role in the delay plaguing both the state and federal prosecutions.

[10]  Months prior to his appearance in this court on September 21, 2015, defendant filed a handwritten document with this court petitioning to be appointed as his own counsel.  (Doc. No. 13.)  On December 3, 2105, he filed a handwritten document in this action demanding a speedy trial.  (Doc. No. 13.)  On December 4, 2015, this case was reassigned to the undersigned.  (Doc. No. 14.)  Since his initial appearance in this court, defendant has been represented by, in order of appearance:  the Federal Defender's Office (following his withdrawal of his motion to be appointed as his own counsel) (Doc. No. 16; CJA counsel Mark Broughton (Doc. Nos. 28–30); himself, proceeding in *pro se* (Doc. Nos. 31–32); CJA counsel Carol Moses (Doc. No. 58, 66, 70); and himself proceeding in *pro se* once again (Doc. No. 115).

have been fatal to the probable cause determination.  (Doc. No. 78 at 3–10.)  Defendant further contends that the search warrant suffers from other deficiencies requiring the suppression of all evidence seized pursuant thereto.  Among these other claimed deficiencies are:  the warrant did not specify the crime(s) to which probable cause related (Doc. No. 110 at 5–7); the information set forth in the affidavit was stale (*id.* at 11–12); the warrant lacked particularity in its description of what was authorized to be seized (*id.* at 8–10); the warrant was overbroad (*id.* at 10–12); and the good faith exception to the exclusionary rule announced in *United States v. Leon*, 468 U.S. 897 (1984) is inapplicable here and suppression of all evidence seized is appropriate given the obviously defective nature of the search warrant.  (*Id.* at 12–13.)

**ANALYSIS**

**A.  False Statements in and Omissions from the Search Warrant Affidavit**

Defendant first argues that Detective Alvarado knowingly or recklessly included false statements in and omitted material facts from his affidavit, even though the true facts were known or should have been known to him at the time he drafted that affidavit.  Where a challenge such as this is raised, the affidavit in support of a search warrant is entitled to "a presumption of validity."  *Franks*, 438 U.S. at 171.  However,

> [a] defendant is entitled to an evidentiary hearing if he "makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause."

*United States v. Craighead*, 539 F.3d 1073, 1080–81 (9th Cir. 2008) (quoting *Franks*, 438 U.S. at 155–56); *see also United States v. Flyer*, 633 F.3d 911, 916 (9th Cir. 2011); *United States v. Bennett*, 219 F.3d 1117, 1124 (9th Cir. 2000); *United States v. Johns*, 851 F.2d 1131, 1133 (9th Cir. 1988).[11]  To prevail on a *Franks* challenge to the veracity of the affidavit and the validity of the warrant, the defendant must ultimately establish by a preponderance of the evidence:  (1) that the affiant officer intentionally or recklessly made false or misleading statements or omissions in support of the warrant; and (2) that the false or misleading statement or omission was material,

---

[11]  In this case, the court previously found that defendant had made a substantial preliminary showing, entitling him to the evidentiary hearing that was held.

that is, it was necessary to the finding of probable cause.  *United States v. Perkins*, 850 F.3d 1109, 1116 (9th Cir. 2017) (citing *United States v. Martinez-Garcia*, 397 F.3d 1205, 1214–15 (9th Cir. 2005).  If the defendant satisfies both requirements, "the search warrant must be voided and the fruits of the search excluded."  *Perkins*, 850 F.3d at 1116 (quoting *Franks*, 438 U.S. at 156).

Detective Alvarado's brief, three-page search warrant affidavit has been set forth in its entirety above.  Defendant asserts that the affidavit in support of the warrant contains materially false statements and omitted material facts that were necessary to the finding of probable cause.  Specifically, defendant contends as follows:

a. According to Corporal Kerr's report of interview, CV1's mother never mentioned defendant's last name, the location of the kissing incident, or the number of times her daughter claimed to have been kissed, but rather reported only that "a neighbor by the name of Dimitrious kissed her [daughter] a year ago."

b. According to Corporal Kerr's report of interview, CV1's mother did not state that defendant had taken pictures of CV2, but rather reported that her daughter had told her that defendant had a picture of CV2 in a bathing suit on his computer as a screensaver.

c. CV1 claimed to Corporal Kerr that she tripped into defendant's apartment, a claim that Corporal Kerr stated in her report she believed was dishonest, while the affidavit states that CV1 "walked into" defendant's apartment.

d. The Multi-disciplinary Interview Center ("MDIC") interview of CV2 reflects that she reported a single incident of defendant putting his hand on her butt while swimming, not that he "always touches her butt when they go swimming" as reported in the affidavit.

e. CV2 did not say that defendant had taken "several" photos of her in her bathing suit as reported in the affidavit, but rather said defendant had taken one photo of her in her bathing suit on the staircase of the apartment.

f. Detective Alvarado omitted from his affidavit that:  neither CV1 nor her parents made a complaint to the police; CV1 had told her mother the kissing incident occurred over a year ago; CV1 had given several different dates of the kissing incident ranging from five months to one year prior to her interview; in Corporal Kerr's opinion, CV1 had lied about tripping into defendant's apartment, and continued to lie when pressed on that detail in a subsequent interview; CV1 stated that she never got any candy or Gatorade from the defendant; CV1 could not describe the color of the furniture inside defendant's apartment; CV1's account of the kissing incident included that defendant made no contact with CV1 with his body or his hands at any time; defendant never said

10

anything to CV1 any time in the apartment or when she left the apartment; CV2 stated in her MDIC interview that she jumped on the defendant's back trying to get a ball and he tried to get her off his back when his hand touched her butt; CV2 stated that the touching incident in the pool only happened once; CV1's mother reported that on June 6, 2007, defendant came to her door, was upset and wanted to talk to her regarding rumors that he had kissed CV1, and denied that it had occurred; CV1 told Corporal Kerr that CV2 and her sister had thrown dirt and strawberries at defendant's apartment door; and CV1 told Corporal Kerr that her parents do not allow her to enter defendant's apartment.

As noted, the undersigned granted defendant's request for a *Franks* hearing, finding that he had made a substantial preliminary showing that false statements were made or that there were material omissions from the affidavit knowingly and intentionally, or with reckless disregard for the truth, and that if corrected would have impacted the finding of probable cause. (Doc. No. 88 at 6.) In finding that a substantial preliminary showing had been made, the court stated:

This is particularly true given the questionable showing of probable cause made within the four corners of the three-page search warrant affidavit and the breadth of the warrant that may have been issued based upon that showing. As required by *Franks*, defendant has alleged that the statements of C/V #1, C/V #1's mother and C/V #2 were not accurately reported in Detective Alvarado's affidavit. Defendant bolsters this contention with copies of the reports of those interviews as well as transcripts of some of them reflecting both the inaccurate statements in the search warrant affidavit as well as the fact that it appears Detective Alvarado was aware of what the witnesses actually said. A similar showing has been made with the various omissions alleged by defendant. That showing is "substantial" in that if the alleged inaccurate statements are corrected and the alleged omitted facts added to the search warrant affidavit, a significant doubt would be cast on the existence of probable cause justifying the issuance of this warrant. This is especially true in light of the weak nexus between the probable cause showing, the location to be searched, and the items apparently to be seized pursuant to the warrant as originally presented.

(*Id*. at 7.)

At the *Franks* hearing, Detective Alvarado generally testified that he believed that the information he recounted in his statement of probable cause was truthful, and that he did not intend to include anything that was not truthful or designed to mislead the magistrate judge. (Doc. No. 107 at 14:7–15.) However, Detective Alvarado conceded that the following statements made in his three-page affidavit were inaccurate and, at least potentially, misleading:

/////

11

1. "[C/V #1's mother] advised Cpl. Kerr that C/V #1 had told her that a neighbor by the name of Dimitrious Kastas [sic] had cornered her in his apartment's doorway and kissed her on the mouth five times." (Doc. No. 85-1 at 8.) In fact, this statement was not related by the mother but was instead related by CV1.[12] (Doc. No. 107 at 21:15–22:2, 23:5–9.)

2. "C/V #2 further stated [defendant] has taken several photos of her using his camera while she is wearing her bathing suit." (Doc. No. 85-1 at 9.) In fact, during her MDIC interview CV2 had only reported a single photo taken of her by defendant while she was wearing a bathing suit. (Doc. No. 107 at 25:13–14, 27:21–28:22.)

3. "C/V #2 advised that [defendant] always touches her butt when they go swimming in the apartment complex pool." (Doc. No. 85-1 at 8–9.) In fact, during her interview CV2 reported only that the defendant had touched her butt on one occasion while swimming. (Doc. No. 107 at 33:5–14, 48:17–49:7.)

4. In connection with the alleged kissing incident, "C/V #1 walked in to [sic] the apartment. . . ." (Doc. No. 85-1 at 8.) In fact, Corporal Kerr had reported that CV1 had reported to her that she had "tripped into the apartment" and that Corporal Kerr reported she felt CV1 was being deceptive in this regard, yet Corporal Kerr's belief that CV1 was being deceptive on this point was not included in by Detective Alvarado in his affidavit.[13] (Doc. No. 107 at 31:23–32:9, 58:16–60:1.) Detective Alvarado

---

[12] Detective Alvarado's affidavit also stated that CV1's mother informed Corporal Kerr that "C/V #1 . . . told [her mother] that [defendant] had taken pictures of C/V #2 while she was wearing a bathing suit." (Doc. No. 85-1 at 8.) However, Corporal Kerr's report stated only that CV1's mother said that CV1 had heard that defendant had a single photograph of CV2 in her bathing suit as his screensaver. (Doc. No. 78-3 at 4.)

[13] It was not entirely clear from his testimony whether Detective Alvarado fully understood what exculpatory information, or information detracting from a showing of probable cause, is. (*See* Doc. No. 107 at 37:12–24.) In any event, it was clear that his decision not to include in his affidavit this and other information potentially detracting from his probable cause showing was based on his erroneous belief that such information need not be submitted to the reviewing judge but, rather, that only information supporting probable cause need be provided. (*Id.* at 37:5–11, 59:4–7.) Of course, it has long been clearly established that "[a]n officer presenting a search warrant application has a duty to provide, in good faith, all relevant information to the

conceded at the hearing that this information should have been included in his affidavit. (*Id*. at 59:16–60:4.)

In addition to conceding several false statements and omissions from his affidavit, Detective Alvarado also admitted during his testimony that he had simply cut and pasted the several paragraphs authorizing the search for and seizure of "[a]ll electronic processing and storage devices, computers and computer systems, etc." from a previous child pornography search warrant he had done. (*Id*. at 60:16–61:13.) He did so, even though he acknowledged he had developed no evidence indicating the defendant possessed lewd or lascivious photographs of children, photographs of children posed in a suggestive manner, or child pornography, but rather only evidence of one photograph taken of a young girl in her bathing suit. (*Id*. at 55:19–57:22, 61:10–13, 67:16–68:15.) Confusingly, Detective Alvarado testified that he did not intend to seek a search warrant authorizing a search for child pornography (despite his cutting and pasting of an excerpt from a previous child pornography warrant), but that he believed the search of defendant's computer would result in the seizure of child pornography.[14] (*Id.* at 56:4–7, 70:20–

---

magistrate." *Perkins*, 850 F.3d at 1116 (quoting *United States v. Hill*, 459 F.3d 966, 971 n.6 (9th Cir. 2006)); *see also id.*, 850 F.3d at 1117–18 (noting the affiant "selectively included information bolstering probable cause, while omitting information that did not" and concluding this "usurped the magistrate's duty to conduct an independent evaluation of probable cause"); *United States v. Johns*, 948 F.2d 599, 606–07 (9th Cir. 1991) (omitting facts that "cast doubt on the existence of probable cause" makes such omissions material); *United States v. Flores*, 679 F.2d 173, 177 n.1 (9th Cir. 1982) ("A magistrate cannot adequately determine the existence of probable cause with the requisite judicial neutrality and independence if the police provide him or her with a false, misleading, or partial statement of the relevant facts.").

[14] Indeed, the inclusion of the boilerplate paragraphs in Attachment B to the warrant describing characteristics of those "who produce, trade, distribute or possess images / pictures of minors engaged in sexually explicit conduct" appears to have in fact misled the reviewing judge—the same judge that subsequently denied defendant's prior *pro se* motion to suppress filed in state court—about the nature of the warrant. In the state court's denial of defendant's motion to suppress in its entirety, that court based its decision, at least in part, on its interpretation that "police officers had probable cause to believe that Defendant was in possession of sexually explicit images of Confidential Victim # 2." (Doc. No. 85-3 at 6.) It appears the state court assumed that the "images" identified in the warrant were in fact sexually explicit, as reflected in its statement that: "[w]hen it comes to the electronic storage of the digital images of the Confidential Victims, Detective Alvarado, based on his training and experience, stated in his affidavit that people who produce, trade, distribute or possess images of minors engaged in sexually explicit conduct collect such images, rarely, if ever, dispose of such images, and store

13

71:8, 74:9–24.)

Since it was established at the hearing that the affidavit contained false statements and omitted seemingly material information, the next question is whether the affiant officer did so intentionally or with reckless disregard for the truth. *See Perkins*, 850 F.3d at 1116; *Martinez-Garcia*, 397 F.3d at 1214–15. Here, the prosecution suggests that some of the false statements in the affidavit could be attributed to the fact that the affiant did not have the transcripts of the MDIC interviews of CV1 and CV2 at the time that he drafted his affidavit. This explanation rings hollow. Detective Alvarado's testimony establishes that, at the time he drafted his search warrant affidavit, he had both of Corporal Kerr's reports. (Doc. No. 107 at 12:10–13:5, 35:23–36:4, 40:14–18.) In addition, he was present for the MDIC interviews of both CV1 and CV2 and took his own notes of what was said during those interviews. (*Id*. at 19:11–21:7.) While it is true that transcripts of those interviews were not yet prepared at the time he drafted his search warrant affidavit (*id*. at 20:14–16), he had recordings of those interviews to review if he wished to, as well as his own notes. (*Id*. at 39:22–40:18.) Under these circumstances the false statements in and omissions from the affidavit were done, at the very least, with a reckless disregard for the truth of that affidavit.[15]

Over his short three-page affidavit, the affiant related the facts developed by the investigation inaccurately and in a manner suggesting a stronger showing of probable cause, despite the fact that he possessed the few reports and interviews upon which his affidavit was purportedly based. *See Chism v. Washington State,* 661 F.3d 380, 388 (9th Cir. 2011) ("The most commonsense evidence that the officers acted with at least a reckless disregard for the truth is that the omissions and false statements contained in the affidavit were all facts that were within [the affiant's] personal knowledge."); *United States v. DeLeon*, 979 F.2d 761, 764 (9th Cir. 1992)

_____

the images in many different formats." (*Id.* at 4.) Of course, as Detective Alvarado admitted at the evidentiary hearing in this case, there was no such evidence that defendant possessed or had taken "sexually explicit images" of CV2 or any other child.

[15] Indeed, by his own admission, the omission of CV1 telling police that she "tripped into" defendant's apartment before the alleged kissing incident and Corporal Kerr's belief that she was being deceitful in this regard was intentional. (*Id.* at 31–32, 58–60.)

(omission of the complete statement of a witness which in part arguably detracted from the probable cause showing was done in reckless disregard for the truth even where the information was hidden from the affiant officer by another investigator); *United States v. Chesher*, 678 F.2d 1353 (9th Cir. 1982) (reckless disregard in saying a suspect was a current member of the Hell's Angels when affiant had been conducting an investigation for some time which should have apprised him that was untrue); *see also United States v. Garcia-Zambrano*, 530 F.3d 1249, 1257–58 (10th Cir. 2008) (upholding finding of reckless disregard for the truth of a search warrant affidavit where the affidavit was inconsistent with police reports and witness interviews); *Olson v. Tyler*, 771 F.2d 277, 281 (7th Cir. 1985) ("If an officer submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth . . . he cannot be said to have acted in an objectively reasonable manner[.]").

Having determined that the affidavit demonstrated an intentional or reckless disregard for the truth, the final question is whether the warrant would have nonetheless been properly issued. As the Ninth Circuit has explained:

> If an officer submitted false statements, the court purges those statements and determines whether what is left justifies issuance of the warrant." [*Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009)]. "If the officer omitted facts required to prevent technically true statements in the affidavit from being misleading, the court determines whether the affidavit, once corrected and supplemented, establishes probable cause." *Id.*

*United States v. Ruiz*, 758 F.3d 1144, 1148 (9th Cir. 2014); *see also Perkins*, 850 F.3d at 1119; *United States v. Stanert*, 762 F.2d 775, 782, *amended on other grounds*, 769 F.2d 1410 (9th Cir. 1985). In retesting the warrant, the court is to employ the well-recognized probable cause standard. *See Illinois v Gates*, 462 U.S. 213, 231 (1983); *United States v. Faagai*, 869 F.3d 1145, 1150 (9th Cir. 2017); *United States v. Gourde*, 440 F.3d 1065, 1069 (9th Cir. 2006) (*en banc*) (recognizing that probable cause means "fair probability," not certainty or even a preponderance of the evidence, and concluding that it was reasonable to infer that there was a fair probability that defendant "received or downloaded" child pornography images based on the defendant's paid

subscription to a child pornography website).[16]  However, in light of the false statements and/or

material omissions, the earlier probable cause determination is not entitled to the usual deference.

*United States v. Kelly*, 482 F.3d 1047, 1051 (9th Cir. 2007) ("We agree that this limited exception

to the 'great deference' rule makes sense, for the magistrate's judgment would have been based

on facts that are no longer on the table."); *see also United States v. Job*, 871 F.3d 852, 864 (9th

Cir. 2017) (similarly, no deference where the warrant is issued based upon unlawfully obtained

evidence); *United States v. Gaines*, No. 22:12-cr-00449-GMN-GWF, 2013 WL 5533192, *3 (D.

Az. Oct. 4, 2013) ("Other circuits likewise have decided that review of the sufficiency of an

excised affidavit cannot be deferential.") (citing cases).

   Here, the court is convinced that with the false statements and omissions corrected, this

search warrant, as issued, could not have been properly authorized.  All the reviewing judge

would have had before him was an affidavit stating that:  1) a month earlier police received a

report that at some unspecified time the defendant had invited three girls into his apartment for

candy and Gatorade and then blocked CV1 in the doorway of his apartment and quickly kissed

her five times; 2) on one subsequent occasion CV1 saw defendant purposely grab CV2's butt

while they were playing soccer; 3) on one occasion at an unspecified time the defendant had

purposely touched CV2's butt while they were swimming in the apartment complex pool; 4) CV2

also reported that six months earlier the defendant had invited her to get candy from a bowl in his

apartment and had placed his hands over her shoulders onto her chest; and 5) the defendant had

on one unspecified occasion taken a photograph of CV2 while she was wearing her bathing suit

and had used the image as a screen saver on his computer.  That limited information would have

perhaps established probable cause to believe that the defendant had annoyed or molested a child

in violation of California Penal Code § 647.6(a), a misdemeanor offense absent certain prior

convictions.  *See* California Penal Code § 647.6(c).  Even if these facts could have arguably

---

[16]  The probable cause standard is inherently "incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003).  Nevertheless, "the substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and that the belief of guilt must be particularized with respect to the person to be searched or seized." *Id.* (citations and quotations omitted).

supported probable cause to believe that the felony offense of lewd or lascivious acts on a child in violation of Penal Code § 288(a) had been committed,[17] they could not have supported probable cause for the broad computer search authorized here, which in reality was aimed at discovery of child pornography. At most, perhaps, a warrant conceivably could have been issued for the candy bowl, a digital camera, and the photo of CV2 in her bathing suit.

This conclusion is in keeping with settled, binding Ninth Circuit precedent. The Ninth Circuit has held that "a warrant predicated on the bare inference that those who molest children are likely to possess child pornography . . . , alone, does not establish probable cause to search a suspected child molester's home for child pornography." *United States v. Needham*, 718 F.3d 1190, 1195 (9th Cir. 2013); *see also Perkins*, 850 F.3d at 1120–21 (holding that absent any explanation of why defendant's prior child molestation conviction made it more likely that he possessed child pornography, the prior conviction did not support probable cause for child pornography warrant); *Dougherty v. City of Covina*, 654 F.3d 892, 899 (9th Cir. 2011) ("Officer Bobkiewicz's conclusory statement tying this 'subject,' alleged to have molested two children and looked inappropriately at others, to 'having in [his] possession child pornography' is insufficient to create probable cause here."); *United States v. Weber*, 923 F.2d 1338, 1344–45 (9th Cir. 1991) (holding that conclusory statements about the habits of "child molesters," "pedophiles," and "child pornography collectors," coupled with evidence that on one occasion the defendant had ordered but never picked up child pornography, was insufficient to establish probable cause).

/////

---

[17] The felony offense of lewd or lascivious acts on a child is defined as any touching of a child "with the intent of arousing, appealing to, or gratifying the lust, passions or sexual desires of that person or the child." Cal. Penal Code § 288(a). This definition recognizes that some apparently sexual contact may be innocuous depending on the intent underlying the contact. *People v. Levesque*, 35 Cal. App. 4th 530, 540–41 (1995) ("In all cases arising under [section 288] the purpose of the perpetrator in touching the child is the controlling factor and each case is to be examined in the light of the intent with which the act was done.") (quoting *People v. Hobbs*, 109 Cal. App. 2d 189, 198 (1952)). In contrast, a violation of Penal Code § 647.6, the offense of annoying or molesting a child under the age of 18, is a general intent crime. *Ruelas v. Superior Court*, 235 Cal. App. 4th 375, 379 (2015); *People v. Brandao*, 203 Cal. App. 4th 436, 445 (2012).

17

Indeed, in this case and as he conceded at the evidentiary hearing, Detective Alvarado did not even attempt to draw this impermissible connection in his affidavit. (Doc. No. 107 at 65:6–68:15.) At the evidentiary hearing, Detective Alvarado testified that the only link suggesting that defendant might possess child pornography was "[t]he fact that [defendant]'s taking photographs of the juveniles." (*Id.* at 67:23–68:4.) The mere taking of photographs of children—when there was no suggestion that those photographs were lewd or lascivious—cannot suffice as probable cause to believe defendant was in possession of child pornography. The Fourth Circuit's decision in *United States v. Doyle* is instructive in this regard. There, the warrant application contained detailed allegations that Doyle had sexually assaulted three children, but only a single fact conceivably related to pornography: a statement that one of the alleged victims disclosed to a relative that Doyle had shown the victim pictures of nude children. 650 F.3d 460, 472 (4th Cir. 2011). The Fourth Circuit held that probable cause to search Doyle's home for child pornography was lacking in part because even though the statement was credible, it did not include any facts tending to show "that the pictures referenced . . . actually constituted child pornography," as opposed to mere nudity. *Id.* at 473. The facts here are even less probative than those in *Doyle*: here, the child in the singular photograph was not nude, and there was no suggestion that the photograph was otherwise lewd or lascivious. (Doc. No. 107 at 56:14–18, 57:12–15.)

Finally, at the evidentiary hearing the government elicited testimony from the affiant regarding facts that may have contributed to probable cause but were not included in the affidavit. The government suggests that the court should take such information into account in determining whether a corrected affidavit would have properly resulted in the issuance of this warrant. This argument is unpersuasive. As the Ninth Circuit has held:

> *Franks* does permit a court to purge the false statements and to sustain the warrant if the unpurged residue would justify it. But what will sustain the warrant must already be within it. The County is pointing to evidence not cited in the warrant. That evidence cannot sustain the warrant. *See United States v. Davis*, 714 F.2d 896, 899 (9th Cir. 1983) (under *Franks*, "[t]he fact that probable cause did exist and could have been established by a truthful affidavit does not cure the error.").

*Baldwin v. Placer County*, 418 F.3d 966, 967 (9th Cir. 2005); *see also Ewing v. City of Stockton*,

588 F.3d 1218, 1225 at n.8 (9th Cir. 2009); *Gaines*, 2013 WL 5533192, at *5. The review of the corrected affidavit is therefore properly limited to what is left within its corrected four corners. *Crowe w. County of San Diego*, 608 F.3d 406, 434 (9th Cir. 2010) (quoting *Stanert*, 762 F.2d at 778); *see also United States v. Luong*, 470 F.3d 896, 904 (9th Cir. 2006) ("This Court has repeatedly held that [a]ll data necessary to show probable cause for the issuance of a search warrant must be contained within the four corners of a written affidavit given under oath." (internal quotation marks omitted)). Finally, probable cause must exist to seize all the items of a particular type described in a search warrant. *United States v. Spilotro*, 800 F.2d 959, 963 (9th Cir. 1986); *see also United States v. SDI Future Health, Inc.*, 568 F.3d 684, 705 (9th Cir. 2009) ("We therefore conclude that Categories 9, 10, 11, 12, and 24 were overbroad because "probable cause [did not] exist[ ] to seize all items of [those] particular type[s].") (quoting *United States v. Adjani*, 452 F.3d 1140, 1148 (9th Cir. 2006)).

The court has concluded that defendant has established a *Franks* violation in this case. "Suppression remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth." *Leon*, 468 U.S. at 923. The good faith exception to the exclusionary rule, therefore, does not apply in cases involving a *Franks* violation. *Id.*; *see also United States v. Huggins*, 299 F.3d 1039, 1044 (9th Cir. 2002); *Mills v. Graves*, 930 F.2d 729, 733 (9th Cir. 1991) ("There is no 'good faith' exception to the *Franks* doctrine: a warrant based upon knowing or recklessly made falsehoods in the affidavit will be invalid."). Accordingly, defendant's motion to suppress the evidence seized pursuant to the challenged warrant must be granted.

### B. Motion to Quash Search Warrant and Suppress Evidence

Defendant also contends that the search warrant suffered from numerous other deficiencies and should be quashed in its entirety. First, defendant argues that the search warrant stated that the identified property subject to seizure was "lawfully seizable pursuant to [California] Penal Code § 1524" but did not identify which grounds for issuance of the warrant identified by that state statute were being relied upon for its issuance. (Doc. No. 110 at 5.)

However, by its terms, it appears that § 1524 does not require an affiant seeking a warrant to specify the law or laws believed to have been violated. Moreover, there is no constitutional requirement that a search warrant describe the specific crimes the evidence to be seized relates to. *See United States v. Grubbs*, 547 U.S. 90, 98 (2006) (observing that the Fourth Amendment "specifies only two matters that must be 'particularly describ[ed]' in the warrant: 'the place to be searched' and 'the persons or things to be seized[;]', and that the court has "previously rejected efforts to expand the scope of this provision to embrace unenumerated matters"); *see also United States v. Hill*, 55 F.3d 479, 481 (9th Cir. 1995) ("[T]he failure to specify an offense did not render the warrant invalid."); *United States v. Koyomejian*, 970 F.2d 536, 548 (9th Cir. 1992) (concurring opinion) ("I am aware of no constitutional requirement that an applicant for a warrant specify, and the judge determine, the precise statute violated; all authority is to the contrary."). Thus, it would appear that this contention by defendant lacks merit.

Defendant next objects that the information contained in the search warrant affidavit was stale. (Doc. No. 110 at 11–12.) However, the "mere lapse of substantial amounts of time is not controlling in a question of staleness." *United States v. Dozier*, 844 F.2d 701, 707 (9th Cir. 1988). Rather, the court must "evaluate staleness in light of the particular facts of the case and the nature of the criminal activity and property sought." *United States v. Pitts*, 6 F.3d 1366, 1369 (9th Cir. 1993) (internal quotation omitted). "The information offered in support of the application for a search warrant is not stale if 'there is sufficient basis to believe, based on a continuing pattern or other good reasons, that the items to be seized are still on the premises.'" *United States v. Lacy*, 119 F.3d 742, 745–46 (9th Cir. 1997) (quoting *United States v. Gann*, 732 F.2d 714, 722 (9th Cir. 1984)). Here, the facts presented to establish probable cause for the issuance of the warrant were not limited to the kissing incident involving CV1, but also included other instances of alleged inappropriate touching by defendant. Considering the search warrant affidavit as a whole, and the various reported incidents, the issuing judge had a substantial basis upon which to find probable cause to believe that the defendant was engaged in a pattern of inappropriate touching of female minors that continued to the date of the affidavit. Likewise, this showing would appear to support a conclusion that there was probable cause to believe that the

candy bowl—which defendant contends is the only item of property to be seized listed in the search warrant related to the inappropriate touching allegation (Doc. No. 110 at 11)—would be found at the defendant's apartment at the time of the search.

Defendant next challenges the specificity of the search warrant. (Doc. No. 110 at 8–12.) For a search to be reasonable under the Fourth Amendment, the warrant must be specific. *United States v. Towne*, 997 F.2d 537, 544 (9th Cir. 1993); *In re Grand Jury Subpoenas Dated Dec. 10, 1987*, 926 F.2d 847, 856 (9th Cir. 1991). The specificity requirement has two distinct aspects: particularity and breadth. *Towne*, 997 F.2d at 544; *In re Grand Jury Subpoenas*, 926 F.2d at 856–57; *see also SDI Future Health, Inc.*, 568 F.3d at 702.

For a warrant to be sufficiently particular, it must make clear to the executing officer what it is that he or she is authorized to search for and seize. *See SDI Future Health*, 568 F.3d at 702; *Spilotro*, 800 F.2d at 963 ("The description must be specific enough to enable the person conducting the search reasonably to identify the things authorized to be seized."). The level of detail required in the warrant to satisfy the particularity requirement "is related to the particular circumstances and the nature of the evidence sought." *SDI Future Health*, 568 F.3d at 702 (quoting *Adjani*, 452 F.3d at 1147). Here, assessment of whether this warrant was sufficiently particular is made extremely difficult by the affiant's cutting and pasting of a statement and description of property to be seized from a prior child pornography warrant he had drafted into Attachment B of this warrant, with no connection being drawn in his affidavit between this investigation and that description of property.[18] Here, Attachment B of the search warrant may have been sufficiently particular in authorizing the search for a candy bowl and a digital camera

---

[18] As suggested at the evidentiary hearing, this court was troubled by the jumbled nature of the affidavit and the search warrant along with various other aspects of the warrant application. The incorporation of an affidavit into a search warrant to provide particularity is relatively common. *See Towne*, 997 F.2d at 545. However, the undersigned has never heard of a warrant, in this case Attachment B thereto describing what is authorized to be seized but also including the affiant's narrative, being incorporated by reference into the affidavit for purposes of establishing probable cause. However, the affiant testified that the warrant, its attachments and his affidavit were all presented to the reviewing judge at the same time. It appears that this arguably suffices as a matter of Ninth Circuit law. *See United States v. Vesikuru*, 314 F.3d 1116, 1121 (9th Cir. 2002) ("The documents that are in fact relied upon . . . simply *are* 'the search warrant' for purposes of constitutional analysis.") (quoting *Towne*, 997 F.2d at 548).

used by the defendant. However, with respect to the broad computer-related aspects of the search and what was to be seized, it is difficult to ascribe any meaningful limitation from the jumbled, disconnected rationale of the warrant, its attachments and the affidavit—particularly viewed in light of the affiant's testimony at the evidentiary hearing that he was not seeking a warrant authorizing a search for child pornography. (Doc. No. 107 at 56:4–7.)

With respect to overbreadth, the scope of a search warrant must also be limited to only those items for which there is probable cause. *United States v. Whitney*, 633 F.2d 902, 907 (9th Cir. 1980) ("The command to search can never include more than is covered by the showing of probable cause to search.") (quoting *United States v. Hinton*, 219 F.2d 324, 325 (7th Cir. 1955)); *see also United States v. Fries*, 781 F.3d 1137, 1151 (9th Cir. 2015); *Towne*, 997 F.2d at 544 ("[T]he scope of the warrant [must] be limited by the probable cause on which the warrant is based." (internal quotation marks omitted)). Here, defendant alleges that the search warrant was overbroad because it authorized the seizure of evidence related to the possession of child pornography, even though Detective Alvarado's affidavit/statement of probable cause did not allude to any possible crime other than the inappropriate touching of children. (Doc. No. 110 at 10.) Defendant argues that although the affidavit stated that CV2 had reported that he had taken photographs[19] of her in her bathing suit, there was no indication whatsoever that CV2 was posing in a sexually suggestive manner or in any way designed to elicit a sexual response. (*Id.*) According to defendant, this "benign" photograph did not establish probable cause to search his apartment or his computer. (*Id.*)

At the evidentiary hearing Detective Alvarado testified that, based on his training and experience, there was a connection between individuals who commit lewd or lascivious acts against minors and possession of child pornography. (Doc. No. 107 at 65:6–11.) Despite being asked to do so, however, he was unable to identify anywhere in his search warrant affidavit that there were facts provided establishing such a connection. (*Id*. at 65:6–68:15.) Moreover, as noted above, the Ninth Circuit has held that "a warrant predicated on the bare inference that those

---

[19] As noted above, the reference to "photographs" in the affidavit was incorrect because, in fact CV2 had reported a single such photograph.

who molest children are likely to possess child pornography . . . , alone, does not establish probable cause to search a suspected child molester's home for child pornography."[20]  *Needham*, 718 F.3d at 1195; *see also Perkins,* 850 F.3d at 1120; *Dougherty*, 654 F.3d at 899; *Weber*, 923 F.2d at 1344–45.

As the court has concluded above in addressing the *Franks* violation, under this Ninth Circuit authority, the search warrant at issue here would appear to be clearly overbroad. *Needham*, *Dougherty*, and *Weber* are indistinguishable from the present case.  Detective Alvarado's affidavit provided no facts supporting probable cause to believe that child pornography would be found at defendant's apartment.  There was no allegation of nudity in the photograph of CV2, and no other information in the affidavit supporting a belief that defendant in fact possessed child pornography apart from affiant's apparent conjecture.  Moreover, in Attachment B to the warrant identifying what was to be seized, the affiant apparently described the characteristics of "people who produce, trade, distribute or possess images / pictures of minors engaged in sexually explicit conduct," without ever even identifying defendant as such a person (Doc. No. 85-1 at 4), and with "boilerplate recitations" about the proclivities of such individuals specifically rejected by the Ninth Circuit.  *See Weber*, 923 F.2d at 1345.[21]

---

[20]  Several other circuit courts have also held that evidence of child molestation, alone, does not create probable cause for a search warrant for child pornography.  *See, e.g.*, *Doyle*, 650 F.3d at 472 ("The bulk of the information supplied in the affidavit concerned allegations of sexual assault.  But evidence of child molestation alone does not support probable cause to search for child pornography."); *United States v. Falso*, 544 F.3d 110, 123 (2d Cir. 2008) ("[A]lthough Falso's crime allegedly involved the sexual abuse of a minor, it did not relate to child pornography.  That the law criminalizes both child pornography and the sexual abuse (or endangerment) of children cannot be enough.") (citation omitted); *United States v. Hodson*, 543 F.3d 286, 292 (6th Cir. 2008) ("[I]t is beyond dispute that the warrant was defective for lack of probable cause—Detective Pickrell established probable cause for one crime (child molestation) but designed and requested a search for evidence of an entirely different crime (child pornography).").

[21]  The apparent deficiencies in the breadth of the search warrant do not end there.  The last two paragraphs of Attachment B of the search warrant authorized the executing officers to seize all articles of personal property, records, and/or other indicia of stolen property, as well as any and all articles falling under Cal. Penal Code § 537e.  (*Id.*)  Yet, there was obviously not even an attempt by the affiant to establish probable cause to believe such items would be found.  *See* fn. 6, above.  These portions of the warrant are also obviously overbroad because probable cause to search for or seize any stolen property or any articles falling under Penal Code § 537e was absent.

Despite all this, it would appear that even if the search warrant affidavit failed to establish probable cause to search for evidence of child pornography here and the warrant was therefore overbroad, suppression of the evidence seized would not be authorized on this ground because the defendant cannot show that the executing officers' reliance on the warrant was objectively unreasonable. *See Leon*, 468 U.S. at 922–23; *Dougherty*, 654 F.3d at 899–900; *Needham*, 718 F.3d at 1195.

Given the court's determination that the *Franks* violation that occurred in this case requires suppression of the evidence seized pursuant to the warrant, the court need not resolve these additional issues, some much more difficult than others, raised by defendant's challenge to the search warrant.

## SUMMARY

For the foregoing reasons, defendant's motion to suppress evidence, styled as an amended motion to quash the search warrant (Doc. No. 78), is granted based upon the court's determination that a *Franks* violation occurred in this case.

Pursuant to the court's August 16, 2018 minute order, this case is set for status conference on September 10, 2018 at 10:00 a.m. in Courtroom 5. (Doc. No. 120.) In another case pending before the undersigned a motion to dismiss based upon an asserted Speedy Trial Act violation is now pending. *See United States v. Verduzco-Verduzco*, Case No. 17-cr-00231-DAD-BAM, Doc. No. 32. That motion refers somewhat extensively to this action, suggesting that a Speedy Trial Act violation has occurred in this case as well. The court will direct the Clerk of the Court to serve a copy of the motion to dismiss filed in Case No. 17-cr-00231-DAD-BAM, Doc. No. 32 upon defendant Kastis. The court will also direct that the government be prepared to indicate whether it wishes to proceed with the prosecution of this action in light of this order granting defendant's motion to suppress evidence.

/////
/////
/////
/////

**CONCLUSION**

For all the reasons set forth above:

1. Defendant's motion to suppress evidence, styled as an amended motion to quash search warrant (Doc. No. 78), is granted with respect to the claimed *Franks* violation;

2. Defendant's motion for a status conference (Doc. No. 119) is granted and a status conference has been set for September 10, 2018 at 10:00 a.m. in Courtroom 5;

3. The Clerk of the Court is directed to serve this order as well as a copy of Doc. No. 32 in *United States v. Verduzco-Verduzco*, Case No. 17-cr-00231-DAD-BAM, upon defendant Kastis who is currently proceeding *pro se* in this criminal action; and

4. Counsel for the government is directed to be prepared to address at the September 10, 2018 status conference whether the government intends to proceed with the prosecution of this action in light of the court's ruling on the motion to suppress evidence and, if so, its position with respect to whether the Speedy Trial Act has been violated.

IT IS SO ORDERED.

Dated:   __**August 30, 2018**__                    _____
                                                  UNITED STATES DISTRICT JUDGE